SUPREME COURT OF THE STATE OF NEW YORK
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
JUDITH STEIN, as an Executor of the ESTATE OF
KENNETH F. STEIN, JR., GWENDOLYN ZEGEL and
JUDITH STEIN in their capacities as TRUSTEES of a
Testamentary Trust created under the Last Will and
Testament of KENNETH F. STEIN, JR., JUDITH STEIN,
individually and as a beneficiary of the Estate of
KENNETH F. STEIN, JR., DAVID S. J. NEUFELD, as an
Executor of the Estate of KENNETH F. STEIN, JR.,
SAYVILLE FERRY SERVICE, INC., STEIN'S
MARINE LIFT, INC. and KFS CORP. ,

         Plaintiffs,

  – against –

THE NORTHERN ASSURANCE COMPANY OF AMERICA,
ONEBEACON AMERICA INSURANCE COMPANY, and
ONEBEACON INSURANCE GROUP, LTD. d/b/a
INTERNATIONAL MARINE UNDERWRITERS and
JOHN DOE and JANE DOE Nos. 1-4,

         Defendants.

-------------------------------------------------------------------------X

09 CV 1029
(J. Platt)
(M.J. Tomlinson)


## MEMORANDUM OF LAW


NEUFELD & O'LEARY
Attorneys for Plaintiffs
Judith Stein, David S.J. Neufeld
and Gwendolyn Zegel, in such capacities
as they are identified in the caption
370 Lexington Avenue
New York, New York 10017
(212) 986-0999

## TABLE OF CONTENTS

Page No.

Statement of Facts………………………………………………..………....  1

Point I
Defendant Insurers Owed a
Fiduciary Duty to Insureds …………………...………………………….......  6

Point II
Insureds Properly Plead A
Claim for Punitive Damages………………………………….....………………  11

Point III
Defendants' Motion is Premature As
Insureds Require Additional Discovery……………….….…………..…………  15

CONCLUSION………………………………………….……………...............  19

## **Statement of Facts**

The Plaintiffs in this action (the "Insureds")[1] are comprised of the respective owners of five separate parcels of real property all located on the east side of River Road in Sayville, New York.

The Defendants and/or their respective predecessors and/or affiliates (the "Insurers"), sold insurance to the Insureds continuously for more than 17 years through July 19, 2009,[2] inclusive of insurance against claims of property damage and personal injury. The Insurers accepted the premiums for each policy and renewed the same each year.

In March, 2008, Anthony and Rosanne Bernardis commenced an action in the New York Supreme Court (the "Underlying Action") against the Town of Islip, and the owners of eight separate parcels of real estate in Sayville.  Three of the eight parcels are located on the <u>west</u> side of River Road and are neither insured by the Insurers nor owned or operated by the Insureds.  The other five parcels are located on the <u>east</u> side of River Road, and are separately owned by various Insureds, and leased to others.

The Underlying Action seeks property and personal injury damages and alleges, <u>inter alia</u>, that the owners of the eight separate properties each caused Bernardis'

---

[1] The Plaintiffs as used herein refers to the non-corporate plaintiffs, as the Court previously dismissed the claims of the corporate plaintiffs.

[2] One parcel owned by Judith Stein was acquired by her late husband in 1997 at which time it was added to the insurance policy issued by the Insurers to the Insureds.  Additionally, the Estate of Kenneth F. Stein, Jr. and the Testamentary Trust were first named as insureds following the death of Kenneth F. Stein, Jr. in 2000, when they succeeded to Mr. Stein's interests.  (Previously Kenneth F. Stein, Jr. was the named insured.)

property to sustain damage based upon water flowing from parking areas on the properties.

The Insureds promptly provided the Defendants with a copy of the Complaint in the Underlying Action.  In response, the Defendants undertook to provide the Insureds with a defense to the Underlying Action, and on April 14, 2008, appointed the law firm of Nicoletti, Hornig & Sweeney (the "Nicoletti Firm") to represent and defend them, as confirmed by IMU's correspondence to Nicoletti of that date (submitted as a portion of Defendants' Exhibit "A" to the instant motion.)[3]  On or before April 16, 2008, the Defendants notified Insureds that the Nicoletti Firm had been retained to represent them.  Yet, Defendants concealed from the Insureds that on or before April 14, 2008, the Defendants had also retained the Nicoletti Firm as their own counsel to investigate and determine whether a basis existed for Defendants to deprive their Insureds of their insurance benefits.[4]

Indeed, by letter dated April 16, 2008, only recently obtained during discovery, the Nicoletti Firm acknowledged that they intended to act on behalf of the Defendants and not the Insureds.  The letter, written to the Defendants unequivocally asserted that "we shall protect International Marine Underwriters/One Beacon's interest with respect

---

[3] Defendants subsequently issued a reservation of rights letter dated May 19, 2008. Additionally, as a result of the internal separation of responsibilities within OneBeacon Insurance Group ("OBIG"), OBIG issued a separate reservation of rights letter dated August 27, 2008, where it agreed to assume the defense under certain insurance policies of certain of the Owners.  On or about September 15, 2008, OBIG declined coverage on the grounds that the events alleged in the Underlying Action occurred subsequent to the period for which it provided insurance.  OBIG paid the costs of defending the Underlying Action through the date of that declination.

[4] See Defendants' Rule 56.1 Statement at ¶¶ 13-17 and the affidavit of Val Wamser, Esq., sworn to May 25, 2011 at ¶¶ 4.

to this matter."[5]   Moreover, upon their receipt of the file from the Defendants, the Nicoletti Firm (presumably at the direction of Defendants), reviewed coverage issues unrelated to the defense of the Insureds in the Underlying Action.[6]

The Defendants subsequently acknowledged the impropriety of their retention of the Nicoletti Firm both as the Insureds' defense counsel and the Defendants' coverage counsel, when, in May 2008, they appointed another law firm (Bennett Giuliano McDonnell Perrone, LLP ("Bennett")) to represent the Insureds in the Underlying Action. Although Bennett never appeared in the Underlying Action, it also received and reviewed the matter and issued a report to the Defendants, expressly advising them that the assistance of the Insureds' counsel (the law firm of Neufeld & O'Leary) would be "invaluable" to the defense of the Underlying Action.  In response, Defendants informed the Insureds that they could select any attorney to represent them except Neufeld & O'Leary.

On or about October 6, 2008, during the pendency of the Underlying Action, the Insureds, in furtherance of their obligations under their insurance policy, provided the Nicoletti Firm with materials from the Underlying Action, including an unsworn Bill of Particulars submitted by Bernardis.  The particulars asserted that in the spring of 2004,

---

[5] April 16, 2008 letter from Nicoletti to Vincent Corteselli of International Marine Underwriters ("IMU")/One Beacon, submitted as a portion of Defendant's Exhibit "A" (emphasis added).
[6] See Val Wamser's April 17, 2008 e-mail to David S.J. Neufeld, submitted as a portion of Defendant's Exhibit "A."  Whether the Defendants transferred the file to the Nicoletti Firm for purposes of defending the Insureds and/or conducting their coverage counsel is undisclosed, as the Insureds' February 11, 2011 letter motion seeking, inter alia, to depose Vincent Corteselli (the IMU employee who transmitted the file to the Nicoletti Firm) is sub judice.  See Point III, infra.

Bernardis had purportedly told Kenneth F. Stein, III ("K.Stein") that conduct relating to the property on the <u>west</u> side of River Road affected Bernardis' drainage.[7]

None of the Insureds (or for that matter, K.Stein) [8] own, operate or lease property located on the <u>west</u> side of River Road.  Moreover, the Insurers insure neither the property on the <u>west</u> side of the street, nor the owners, operators or tenants of such property.[9]

However, the Insurers attempted to rely upon the unsworn particulars to belatedly deny coverage to all of the Insureds and cease to provide them with a defense in the Underlying Action.  By letter dated November 11, 2008, nearly seven months after undertaking to defend the Insureds, Defendant IMU wrote the Insureds (on behalf of Northern Assurance) and unilaterally informed them that it would cease to provide a defense in the Underlying Action, based upon the particulars.

Defendants never sought a judicial determination authorizing them to abandon the defense they had previously undertaken to provide.  Even after the Insureds requested that Defendants reconsider and withdraw the disclaimer as the unsworn particulars were false and referred to property which the Defendants did not insure and the Insureds did not own or operate, Defendants refused.  The Insureds, left with no alternative, commenced

---

[7] See Exhibit "S" to the Insureds' previously filed summary judgment motion, (which was paper-filed (See ECF Doc. No. 64)) at ¶ 10.

[8] K.Stein is an officer and employee of Sayville Ferry Service, Inc., which leases four of the parcels of property on the <u>east</u> side of River Road named in the Underlying Action from the Insureds.  He is one of three trustees of a testamentary trust which owns (but does not occupy) one parcel on the <u>east</u> side named in the Underlying Action.  See Affidavit of K.Stein sworn to December 9, 2009.  (Submitted as a portion of Doc. No. 49).

[9]The properties on the <u>west</u> side of River Road are owned and operated by separate entities and insured by a separate insurance company which has provided a defense to its Insureds in the Underlying Action.  See Affidavit of David S.J. Neufeld, sworn to December 10, 2009.

the instant action at significant expense to obtain the defense to which they were fully entitled under their insurance policy.

Throughout this litigation, Defendants have consistently caused the Insureds to incur additional expense, going so far as refusing to consent to an amendment of the pleading to withdraw the Insureds' claim for indemnification, despite the fact that the Defendants themselves had asserted that the same was not properly before the Court.

By Order of this Court dated January 28, 2011 (the "Order", ECF Doc. No. 76), the Court granted the Insureds summary judgment on their breach of contract claim, and directed the Defendants to pay all defense costs incurred by the Insureds in connection with their defense of the Underlying Action from September 16, 2008.[10]

However, even in the face of the Order, the Defendants continued to deprive the Insureds of the costs of their defense.  As a result, the Insureds were required to make yet another application to the Court, in opposition to which the Defendants sought to impose still greater expense on their Insureds by seeking an evidentiary hearing with regard to the defense costs incurred in the Underlying Action.  Only after this Court's Order entered May 11, 2011 (ECF Doc. No. 100) and the entry of a money judgment (ECF Doc. No. 104) did Defendants finally reimburse the Insureds for their defense costs.

The Order also granted the Insureds leave to amend their Complaint to include a claim for the breach of fiduciary duty and to add allegations to further support their claim for punitive damages.  Thereafter, the Insureds amended their Complaint on March 25,

---

[10] The defense costs incurred by the Insureds prior to September 16, 2008 had previously been paid by Defendant OBIG prior to Defendants' disclaimer.

5

2011 (the "Complaint", ECF Doc. No. 82), asserting a cause of action for breach of fiduciary duty and seeking punitive damages solely in connection with such claim.

The Order further held that the Insureds could request additional discovery with regard to their claim for punitive damages,[11] and by letter motion dated February 11, 2011, the Insureds requested such additional discovery. The motion is presently <u>sub judice</u>.[12]

### Point I
### Defendant Insurers Owed a
### Fiduciary Duty to Insureds

Defendants now assert that they owed no fiduciary duty to their Insureds and that the allegations contained in the Complaint are duplicative of the Insureds' breach of contract claim. Defendants further assert that the Insureds have failed to allege "a relationship of higher trust than would arise from the contracts alone."[13] Yet, it was Defendants who elevated their obligations to their Insureds and added additional fiduciary elements to the relationship between the parties when they undertook to provide a defense to the Insureds.[14] After assuming these additional fiduciary duties, Defendants proceeded to violate their obligations at every turn, commencing with their appointment of the Nicoletti Firm, <u>both</u> as their Insureds' defense counsel and contemporaneously as counsel to deny coverage to their Insureds.

It is well-settled that once an insurer is called upon to defend its insured and undertakes to do so, a fiduciary relationship exists and the insurer must act with

---

[11] See the Order at page 43.
[12] At a conference held on April 7, 2011, Magistrate Judge A. Kathleen Tomlinson requested that the parties brief certain issues related to the Insureds' entitlement to such discovery which were fully submitted on April 21, 2011.
[13] See Defendants' Memorandum of Law (ECF Doc. # 107) at p. 14.
[14] It is undisputed that prior to disclaiming coverage, Defendants undertook to defend the Insureds in the underlying action subject to a reservation of rights. See Paragraphs 19-21 of Defendants' Rule 56.1 Statement (ECF Doc. No. 108).

underlined loyalty to its insureds:

> It is well established that, as between an insurer and its assured, a fiduciary relationship does exist requiring utmost good faith by the carrier it its dealings with its insured. In defending a claim, an insurer is obligated to act with undivided loyalty; it may not place its own interests above those of its assured.

Hartford Accident and Indem. Co. v. Mich. Mutual Ins. Co., 93 A.D.2d 337, 340-41 (1st

Dept. 1983), aff'd 61 N.Y.2d 569 (1984); See Employers Ins. Co. of Wausau v. Crouse-

Cmty. Center, Inc., 489 F.Supp.2d 176, 180 (N.D.N.Y. 2007)("a fiduciary  duty is

created when the insurer undertakes the responsibility of representing the insured in the

context of litigation."); United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp., 948 F.Supp.

263 (S.D.N.Y. 1996).   Where an insurer assumes a defense and then acts in its owns

best interests, rather than those of its insureds, the insurer has breached its fiduciary

obligations.  Hartford, 93 A.D.2d at 340-41; United Nat'l Ins. Co., 948 F.Supp. at 268-69.

Similarly, a recent Eastern District decision held that where a contract establishes a relationship of confidence and trust between the parties, a fiduciary duty exists which is independent of the contract.  In such a case, the conduct which may constitute a breach of contract may also constitute an independent breach of the fiduciary relationship.  St. John's Univ., New York v. Bolton, 757 F.Supp.2d 144, 166-67 (E.D.N.Y. 2010).

The Defendants' improper conduct towards their Insureds is clear, repetitive and unequivocal.  Defendants originally undertook the Insureds' defense and appointed the Nicoletti Firm to represent the Insureds, yet, the Defendants had also retained the identical firm to represent them in their attempt to deny coverage to the same Insureds. Indeed, Defendants' counsel now represents that they had been appointed to

investigate (and attempt to defeat) the Insureds' coverage even though Defendants had appointed them to defend claims against the Insureds – a clear conflict of interest.

Moreover, six months following commencement of the Underlying Action, the Defendants unilaterally and improperly abandoned the defense without seeking the requisite judicial approval.  It is well-settled under New York authority, that an insurer is obligated to pay defense costs through the time a judicial determination that a disclaimer is proper has been made. Avondale Indus., Inc. v. Travelers Indem. Co., 774 F.Supp. 1416, 1427 (S.D.N.Y. 1991); Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp., 126 F.Supp.2d 596, 635 (W.D.N.Y. 2001), aff'd, 302 F.3d 83 (2d Cir. 2002); Burroughs Welcome Co. v. Commercial Union Ins. Co., 632 F.Supp. 1213, 1220 (S.D.N.Y. 1986).

Moreover, the declination ignored the New York legal authorities and Defendants' duty to act with the "utmost good faith" and with "undivided loyalty" to its own Insureds. The belated declination was also improperly predicated upon (a) unsworn particulars filed by a plaintiff in the Underlying Action which was outside of the four corners of the complaint, untested by cross examination, contained assertions denied by the Insureds, and concerned property not insured by Defendants; and (b) inaccurate statements falsely attributed to an Insured by an employee of Defendants.  Although rejected by this Court, the fact that Defendants even attempted to rely upon the same evidences their disregard for the fiduciary duties they owed to the Insureds.   To the contrary, Defendants affirmatively sought to adopt unproven assertions of the parties suing their Insureds in the Underlying Action in order to avoid their obligations to their Insureds, rather than defend their Insureds against the claims asserted in the Underlying Action.

The Defendants' wanton disregard of legal authorities and their duties to their Insureds lead to the inescapable inference that the conduct was intentional.   The Defendants' reliance upon the unsworn particulars from the Underlying Action as a basis for declining coverage was improper and similar attempts by Insurers have been consistently rejected. See Int'l Bus. Mach. Corp. v. Liberty Mut. Fire Ins. Co., 303 F.3d 419, 427, fn. 4 (2d. Cir. 2002)(permitting an insurer to decline based upon extrinsic evidence would create "a perverse incentive to delay making a decision whether to defend the suit, in the hopes that extrinsic evidence would emerge showing the claim fell outside the policy's coverage."); Burlington Ins. Co. v. Guma Const. Corp., 66 A.D.3d 622, 887 N.Y.S.2d 177, 180 (A.D. 2d Dept. 2009)("any evidence that would be obtained through discovery would be irrelevant on this issue . . . insurer cannot avoid its commitment to provide a defense").

Prior to disclaiming coverage, Defendants appointed Bennett to represent the Insureds, only to then ignore his advice that the assistance of the Insureds' counsel (the law firm of Neufeld & O'Leary) would be "invaluable" to the defense of the Underlying Action.   Instead, Defendants contradicted the advice of counsel selected by them (Bennett) by directing that the Insureds could select any attorney to represent them except Neufeld & O'Leary.  A more blatant disregard for the fiduciary obligations owed to the Insured would be difficult to imagine.

After the Defendants improperly abandoned their Insureds (necessitating commencement of this litigation), they continually caused the Insureds to incur unnecessary burdens and expense.  Even after this Court issued its Order directing Defendants to pay the Insureds' costs in the Underlying Action, the Defendants

9

continued to delay, forcing their Insureds to undertake additional expenses to make an additional application to the Court and obtain a money judgment. Such egregious conduct is highly improper and constitutes a wanton breach of Defendants' fiduciary duty to their own Insureds. As such, the Insureds' demand for punitive damages in connection with Defendants' breach of their fiduciary duties is properly pled and must not be prematurely dismissed.

Defendants also urge that the Insureds cannot demonstrate that they have been damaged by Defendants' conduct. Such an argument is ludicrous, as Insureds have been forced to incur significant costs and attorney's fees in this declaratory judgment action as a result of Defendants' misconduct and improper, unilateral decision to disclaim coverage without first seeking a judicial determination as required by law.

Moreover, damages for breach of fiduciary duty also include the disgorgement of profits received by the breaching party. Fieger v. Iral Jewelry, Ltd., 41 N.Y.2d 928, 928-29 (1977) ("One who owes a duty of fidelity to a principal and who is faithless in the performance of his services is generally disentitled to recover his compensation, whether commissions or salary. Nor does it make any difference that the services were beneficial to the principal or that the principal suffered no provable damage as a result of the breach of fidelity by the agent."); Samba Enter., LLC v. iMesh, Inc., 2009 WL 705537 at *9 (S.D.N.Y.). In the instant case, Defendants have accepted significant premiums from Insureds for insurance coverage for many years. As such, the damage award to which Insureds are entitled should also include disgorgement of the applicable premiums. Thus, the Insureds can undoubtedly establish an entitlement to damages resulting from Defendants' clear breach of their fiduciary duty.

10

**Point II**
**Insureds Properly Plead**
**A Claim for Punitive Damages**

Defendants seek dismissal of the Insureds' claims for punitive damages because the Complaint does not allege that the Defendants' conduct was directed at the public generally.   However, where, as here, the Complaint seeks punitive damages in connection with a breach of Defendants' fiduciary duties, "public harm" is not a requisite element for a punitive damages claim predicated upon a tort, such as breach of fiduciary duty.   New York distinguishes between, and applies unique and distinct standards, for punitive damages claims predicated upon breach of contract as contrasted to those predicated upon tort claims.  Indeed, the New York Court of Appeals has expressly refused to dismiss a tort-based punitive damage claim where Plaintiff did not establish a public harm, holding that:

> Nor can we accept defendants' argument that the punitive damages award must be overturned because there was no harm aimed at the public generally.  Punitive damages are allowable in tort cases such as this so long as the very high threshold of moral culpability is satisfied.

Giblin v. Murphy, 73 N.Y.2d 769, 772 (1988)

The New York Court of Appeals subsequently confirmed that "public harm" is only a requisite element for punitive damages predicated upon a breach of contract in New York Univ. v. Cont'l Ins. Co., 87 N.Y.2d 308 (1995):

> We set forth in the decision the pleading elements required to state a claim for punitive damages as an additional and exemplary remedy when the claim arises from a breach of contract.   They are (1) defendant's conduct must be objectionable as an independent tort; (2) the tortuous conduct must be of the egregious nature . . . ; (3) the

11

> egregious conduct must be directed to plaintiff; and (4) it
> must be part of a pattern directed at the public generally.

Id. at 316 (emphasis added).

The foregoing standard is not applicable where, as here, punitive damages are sought in connection with a claim arising from Defendants' breach of their fiduciary duties. Indeed, it is well-settled that:

> The limitation of an award for punitive damages to conduct directed at the general public applies only in breach of contract cases, not in tort cases for breach of fiduciary duty.

Amusement Indus., Inc. v. Stern, 693 F.Supp.2d 301, 317 (S.D.N.Y. 2010), quoting Don Buchwald & Assocs. v. Rich, 281 A.D.2d 329, 330 (1st Dept. 2001)(emphasis added); see also, IDT Corp. v. Morgan Stanley Dean Witter & Co., 45 A.D.3d 419, 420 (1st Dept. 2007), rev'd on other grounds, 12 N.Y.3d 132 (2009); Sherry Assocs. v. Sherry-Netherland, Inc., 273 A.D.2d 14, 15 (1st Dept. 2000); Gray & Assocs., LLC v. Speltz & Weis, LLC, 2009 WL 416138 at *17 (Sup. Ct. NY Cty.)  While Defendants cite certain cases which consider public harm as an element of punitive damages in connection with certain torts, none of these cases involve claims for breach of fiduciary duty (unlike the Amusement Indus. decision, which specifically excludes "public harm" considerations from such claims).

Moreover, the rationale which underlies both punitive damage awards and the New York courts' practice of considering disgorgement of profits in determining damages for a breach of fiduciary duty, are identical:  Courts award damages in excess of what would make the aggrieved party whole in an effort to deter similar conduct in the future.  Compare Walker v. Sheldon, 10 N.Y.2d 401, 404 (1961) ("Punitive damages have been allowed . . . not only to punish the defendant, but to deter him, as well as

others who might otherwise be so prompted, from indulging in similar conduct in the future.") with Samba Enter., LLC v. iMesh, Inc., 2009 WL 705537 at *9 (S.D.N.Y.) ("The function of a claim for breach of fiduciary duty . . is not merely to compensate the plaintiff for wrongs committed by the defendant but . . . to prevent them, by removing from agents and trustees all inducement to attempt dealing for their own benefit . . .").

To establish a right to punitive damages predicated upon a breach of fiduciary duty claim, a plaintiff need establish only one of the following: "intentional or deliberate wrongdoing, aggravating or outrageous circumstances, a fraudulent or evil motive, or a conscious act that willfully and wantonly disregards the rights of another." Amusement Indus., 693 F.Supp. at 317. As is clearly evidenced by their treatment of the Insureds, Defendants undertook a course of intentional and deliberate misconduct which consciously, willfully and wantonly disregarded the Insureds' rights (as detailed at pages 1 through 6, supra and in the Affidavit of Denis P. O'Leary sworn to July 8, 2011).

As public harm is not a requirement when pleading punitive damages for a breach of fiduciary duty, and as the Defendants certainly had a fiduciary relationship with the Insureds (by, inter alia, assuming the Insureds' defense, and initially selecting the Insureds' counsel) the Insureds, rather than the Defendants, are entitled to summary judgment. FRCP 56(f) authorizes the Court to grant summary judgment in favor of the Insureds as nonmovants. In light of the undisputed facts including, inter alia, that the Defendants appointed the Nicoletti Firm both as coverage counsel and Insureds' defense counsel and that Defendants improperly withdrew their defense without a judicial determination, summary judgment in favor of the Insureds on their

13

claim for breach of fiduciary duty and their entitlement to punitive damages is warranted.[15]

Moreover, this Court should likewise grant the Insureds' summary judgment on their claim for the attorneys' fees they have been forced to incur in the instant action. New York law expressly provides that an insured is entitled to legal fees in a declaratory judgment action when the insured "has been cast in a defensive posture by the legal steps an insurer takes in an effort to free itself from its policy obligations." Mighty Midgets, Inc. v. Centennial Ins. Co., 47 N.Y.2d 12, 21 (1979). This relief is generally granted where an insurer commences a declaratory judgment action against its insureds. However, in certain instances, such as those herein, an insured who seeks a declaratory judgment will be awarded attorney's fees. See Lauder v. OneBeacon Ins. Group, LLC, 31 Misc.3d 379, 388 (N.Y. Cty. 2011) citing City of New York v. Zurich-Am. Ins. Co., 798 N.Y.S.2d 708 (Kings Cty. 2004), aff'd 27 A.D.3d 609 (2d. Dept. 2006); American Motorists Ins. Co. v. GET Corp., 2000 WL 1459813 (S.D.N.Y. 2000).

In the instant case the Defendants placed the Insureds in a defensive posture after the Defendants improperly abandoned the defense they undertook to provide during the course of ongoing litigation in the Underlying Action without seeking a judicial determination authorizing such abandonment, as required by New York law. See Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp., 126 F.Supp.2d 596, 635 (W.D.N.Y. 2001),

---

[15] See Defendants' 56.1 Statement ¶¶ 13, 14, 16, 17, 30 and 31. If the Court does not grant the Insureds' summary judgment, it is respectfully requested that Defendants' motion likewise be denied. Indeed, courts have denied summary judgment predicated upon the Second Circuit's express refusal to decide whether the public harm requirement applies to a breach of fiduciary duty claim. See The Official Comm. Of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Sec. Corp., 2002 WL 362794 at *18 (S.D.N.Y.)(refusing to dismiss a claim for punitive damages on a breach of fiduciary claim in light of the Second Circuit's decision in Schonfeld v. Hilliard, 218 F.3d 164, 183-84 (2d Cir. 2000)).

aff'd, 302 F.3d 83 (2d Cir. 2002)("the insurer remains liable for the defense costs incurred in defending the claims asserted in the underlying action until a judicial determination that it is not required to defend such claims"); Avondale Indus., Inc. v. Travelers Indem. Co., 774 F.Supp. 1416, 1427 (S.D.N.Y. 1991); Burroughs Welcome Co. v. Commercial Union Ins. Co., 632 F.Supp. 1213, 1220 (S.D.N.Y. 1986).  As a result of Defendants' conduct, the Insureds only recourse was to commence this action to defend against the Defendants' improper attempt to unilaterally withdraw the defense they had undertaken to provide.

As such, at a minimum, Defendants' motion should be denied.

**Point III**
**Defendants' Motion is Premature**
**As Insureds Require Additional Discovery**

The Order expressly provided that the Insureds were entitled to discovery regarding their claims for punitive damages and directed that

> *To the extent plaintiffs require discovery limited to demonstrating that they are entitled to punitive damages, they are to communicate with Magistrate Judge A. Kathleen Tomlinson's chambers.*[16]

Accordingly, by letter motion filed February 11, 2011 (ECF Doc. #77), the Insureds sought the production of documents previously submitted by Defendants for in camera review at the Court's direction, as well as leave to serve a FRCP 34 document demand and depose two witnesses.  Defendants objected and the motion remains sub judice.  Although the Order seemed to contemplate that the Insureds could utilize such additional discovery to draft the Complaint, the Insureds nonetheless filed the Complaint

---

[16] Order at p. 43.

without benefit of the additional discovery in order to avoid the expiration of their time to amend.

As the Insureds have not yet received the benefit of the additional discovery, to the extent the Court does not deny Defendants' motion for summary judgment for the reasons set forth at Points I and II, supra, such motion should nonetheless be denied without prejudice until the discovery requested by the Insureds, and contemplated by the prior Order of this Court, is determined and the permitted discovery is conducted.

Federal Rule of Civil Procedure 56(d)[17] provides that where a nonmovant shows that it cannot present facts essential to its opposition of a summary judgment motion, the Court may defer or deny the motion, or allow additional discovery.  The affidavit of Denis P. O'Leary, sworn to July 7, 2011 sets forth, inter alia, (1) the information sought in discovery and how it will be obtained; (2) how that information is reasonably expected to raise a genuine issue of material fact; (3) the efforts to date to obtain the information; and (4) why those efforts have been unsuccessful as required by law.  Hudson River Sloop Clearwater, Inc. v. Dep't of Navy, 891 F.2d 414, 422 (2d. Cir. 1989).

Defendants stand accused of breaching the fiduciary duties owed by them to the Insureds, which include a duty to act with undivided loyalty.  The internal considerations and processes of Defendants in their highly improper course of conduct, including, inter alia, nature and substance of their investigation of the Insureds' claim, will confirm that they undertook to act in their own best interests, rather than those of their Insureds when they, inter alia,

---

[17] The revisions of Rule 56 effective December 1, 2010, relocated the former 56(f) to 56(d), with no substantive change.

16

1. Appointed the law firm of Nicoletti, Hornig & Sweeney as both defense counsel for the Insureds and, as Defendants' coverage counsel in furtherance of denying Insureds' coverage;

2. Offered to permit the Insureds to be represented in the Underlying Action by any attorney other than Neufeld & O'Leary after receiving a report from their appointed counsel which expressly stated, in pertinent part, that Neufeld & O'Leary's involvement in the case would be "invaluable";

3. Issued a unilateral disclaimer of the defense they originally undertook to provide Insureds without seeking to obtain a judicial determination and refusal to withdraw such disclaimer in response to the written request of Insureds' counsel

Thus, not only will the information sought establish that Defendants are not entitled to summary judgment, the same will likely establish Insureds' entitlement to such relief.

The Insureds anticipate that the information requested will include and be obtained through the review of voluminous internal correspondence and documents (including billing statements and invoices) of Defendants which are the subject of a motion to compel and which were provided to the Court for in camera review pursuant to the Court's Order entered April 5, 2010 (ECF Doc. No. 67). Indeed, certain of the correspondence which the Magistrate previously directed be produced, after in camera inspection, included correspondence that specifically raises factual issues concerning the timeline surrounding the Defendants retention of the Nicoletti Firm to both defend the Insureds and as Defendants' own coverage counsel.

For example, on April 16, 2008, two days after Vincent Corteselli wrote the Nicoletti Firm to assign them as the Insureds' defense counsel, Nicoletti wrote Defendants that the Nicoletti Firm would act to "protect International Marine Underwriters/One Beacon's

17

interest with respect to this matter."[18]  The correspondence produced to date represents a very small portion of the materials which are the subject of Defendants objections and the in camera review.   As even this partial production contained materials directly related to the allegations of the Complaint, Insureds should certainly be entitled to review the remaining documents in opposing Defendants' motion.

The depositions of non-party Catherine Bolognone and of Defendant Northern Assurance Co. by Vincent Corteselli, (both of whom were directly involved in Defendants pre-disclaimer review and investigation of Insureds' claim) as well as the Defendants' response to the proposed Notice of Discovery and Inspection which was submitted for the Court's consideration with Insureds' February 11, 2011 letter motion will likewise provide Insureds with information which can be used in opposing the instant motion by Defendants.

Insureds have endeavored to obtain the necessary information by (1) a First Notice of Discovery and Inspection dated June 2, 2009; (2) a Deposition notice to Vincent Corteselli dated June 5, 2009; (3) a subpoena dated September 4, 2009 served on non-party Catherine Bolognone; (4) a motion to compel dated June 22, 2009; and (5) the aforementioned letter motion dated February 11, 2011 requesting additional discovery.  To date Insureds have not obtained this information as certain documentation which was the subject of Insureds' motion to compel is presently the subject of in camera review; the Court directed that depositions were not to be conducted until after the determination of the Court's review and determination concerning the Insureds' right to certain documents

---

[18] Submitted as a portion of Defendants' Exhibit "A."

submitted for in camera review, and, additionally, that the February 11, 2011 motion for additional discovery is presently sub judice.

## Conclusion

WHEREFORE, it is respectfully requested that the Defendants' motion for summary judgment be denied and that the Court grant summary judgment to Defendants pursuant to Rule 56(f) or, in the alternative, that Defendants' motion be denied without prejudice to renewal pending the Court's determination of outstanding discovery issues and the completion of the permitted discovery.

Respectfully yours,

NEUFELD & O'LEARY

By: _____
Denis P. O'Leary, Esq.
Attorneys for Plaintiffs
Judith Stein, David S.J. Neufeld
and Gwendolyn Zegel, in such capacities
as they are identified in the caption
370 Lexington Avenue
New York, New York 10017
(212) 986-0999

Of Counsel:

Michael J. Giusto, Esq.