UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
JUDITH STEIN, as an Executor of the
ESTATE OF KENNETH F. STEIN, JR.,
GWENDOLYN ZEGEL and JUDITH STEIN
in their capacities as TRUSTEES of a
Testamentary Trust created under the Last Will
and Testament of KENNETH F. STEIN, JR.,                    **09-CV-1029(TCP)(AKT)**
JUDITH STEIN, individually and as a
beneficiary of the Estate of KENNETH F.                    **MEMORANDUM**
STEIN, JR., DAVID S.J. NEUFELD, as an                      **AND ORDER**
Executor of the Estate of KENNETH F. STEIN,
JR., SAYVILLE FERRY SERVICE, INC.,
STEIN'S MARINE LIFT, INC., and KFS
CORP.,

                        Plaintiffs,

                -against-


THE NORTHERN ASSURANCE COMPANY
OF AMERICA, and ONEBEACON AMERICA
INSURANCE COMPANY d/b/a INTERNATIONAL
MARINE UNDERWRITERS and JOHN DOE
and JANE DOES Nos. 1-4,

                        Defendants.
-------------------------------------------------------X
PLATT, District Judge.

        Before the Court is defendants' motion for summary judgment pursuant to Federal Rule

of Civil Procedure 56 on plaintiffs' remaining claims for punitive damages, breach of fiduciary

duty and attorneys' fees.  For the following reasons, defendants' motion is hereby **GRANTED** in

part and **DENIED** in part.

# I. BACKGROUND

**A.    Facts**

Plaintiffs each reside and/or maintain a principal place of business in New York State.[1] Def. 56.1 Stmt. ¶ 1.  Plaintiffs' insurance broker, Terry Gibson Insurance Agency, Inc., is a New York corporation with its only office and place of business in Bay Shore, New York.  *Id.* at ¶ 2. The insurance policies at issue were negotiated in New York, by and between Terry Gibson Insurance Agency, Inc. and defendants' New York based underwriter.  *Id.* at ¶ 3.  The policies were bound, issued and delivered in New York, and provided coverage with respect to the insureds' New York business operations.  *Id.* at ¶ 4.

The "Commercial General Liability Coverage Form" relevant to the insurance policies provides that there is no liability coverage for claims of property damage that were expected or known by the insured to have occurred prior to the policy period.[2]  *Id*. at ¶ 5.  Specifically, the Commercial General Liability ("CGL") policy provides that the insurance does not apply to "[b]odily injury" or "property damage" expected or intended from the standpoint of the insured. Plt. Exh. U, Commercial General Liability Coverage Form at p. 2.  The "General Conditions for Coverage" section, which applies to all coverage sections of the relevant policies, contains the following provision requiring timely notice of any occurrence that may result in a claim against

---

1.  For the purposes of this motion and for the reasons set forth in the Court's Memorandum and Order dated January 25, 2011 (DE 76), use of the term "plaintiffs" refers only to the non-corporate plaintiffs named in the caption.

2.  When referring to a specific portion of a document, the citation must include an exact page number, bates number or other way of identifying the relevant information.  *See Amnesty America v. Town of West Hartford*, 288 F.3d 467, 470-71 (2d Cir. 2002) ("[B]ecause nothing in the federal rules mandates that district courts conduct an exhaustive search of the entire record before ruling on a motion for summary judgment, district courts are entitled to order litigants to provide specific record citations.").

the insured, to wit:

**8. Notice of Loss**

The Insured shall as soon as practicable report in writing to the Company or its agent every loss, damage or occurrence which may give rise to a claim under this policy and shall also file with the Company or its agent within ninety (90) days from date of discovery of such loss, damage or occurrence, a detailed sworn proof of loss. If claim is made or suit is brought against the Insured, the Insured shall immediately notify the Company and forward to the Company every demand, notice, summons or other legal process.

Def. 56.1 Stmt. ¶ 6; Plt. Exh. U, National Marina Program, Sect. X, ¶ 8.

Plaintiffs dispute defendants' characterization of these sections as limiting the insurer's liability by denying the statements and generally 'refer[ring] the Court to previously submitted Exhibit "U" for the content and legal import thereof." Plt. 56.1 Ctr. Stmt. ¶¶ 5, 6. Eastern District Local Rule 56.1 requires that disputed facts be *specifically* controverted by admissible evidence.[3] Exhibit U, however, contains myriad documents and measures at least one inch thick. Mere reference to the exhibit, then, does not specifically controvert anything. Thus, to the extent any statements herein are supported by the record and not specifically controverted, they will be deemed admitted.

In the underlying Bernardis complaint before New York State's Supreme Court, the Bernardis allege, among other things, that several of the plaintiffs raised the grade level of their property and expanded their parking facilities, which "caused a flow of water from the waterways, wetlands, tidal overflow areas and/or water management areas located on or adjacent

---

3. Pursuant to EDNY Local Rule 56.1(c), "[e]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed admitted for the purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."

to the Defendants' premises on and into plaintiffs' property."  Def. 56.1 Stmt. ¶ 7.  The

complaint does not provide a date when the alleged property damage began to occur.  *Id.* at ¶ 8.

The Bernardis complaint was filed on March 12, 2008.  *Id.* at ¶ 9.

International Marine Underwriters ("IMU") received notice of the Bernardis action from

the law firm of Neufeld & O'Leary.  *Id.* at ¶ 10; Plt. Exh. PP.  David Neufeld of Neufeld &

O'Leary has provided legal services for Kenneth F. Stein Jr. and Judith Stein and is a named

defendant in the Bernardis action in his capacity as an executor for the estate of Kenneth F. Stein,

Jr.  *Id.* at ¶ 11; Plt. 56.1 Ctr. Stmt. ¶ 11.  IMU, by correspondence dated May 19, 2008 and

addressed to Neufeld, noted that Neufeld requested defense and indemnity coverage to IMU

pursuant to policy number N5JH00684 with a policy period of July 19, 2007 to July 19, 2008.

Def. 56.1 Stmt. ¶ 12.  Also by that correspondence, IMU, on behalf of defendants Northern

Assurance ("Northern") and OneBeacon America ("OneBeacon"), advised Neufeld that it had

retained the law firm of Nicoletti, Hornig & Sweeney ("Nicoletti firm") to provide a coverage

analysis and to determine whether IMU had a duty to defend.  *Id.* at ¶ 13.

By correspondence dated April 14, 2008 from IMU's Vincent Corteselli to the Nicoletti

law firm, however, defendants initially requested that the law firm undertake the defense of their

insureds, plaintiffs herein.  Aff. Wamsur, Exh. 1 at 02822.  On April 16, 2008, John Nicoletti of

the law firm wrote to Corteselli to acknowledge receipt of the April 14, 2008 letter.  *Id.* at 02821.

By electronic mail ("email") dated April 16, 2008 and addressed to attorney Val Wamsur of the

Nicoletti firm, Neufeld advised Wamsur that he understood that Wamsur was to represent the

parties named in the underlying Bernardis action.  *Id*. at Exh. 1, email dated Apr. 16, 2008.

Wamsur advised Neufeld that the file had just been received and he was not in a position to

confirm coverage and would advise as soon as possible.  *Id.* at email dated Apr. 17, 2008.

Neufeld then advised Wamsur that if the firm was involved with coverage issues "on behalf of

the insurer," there was a "conflict with the obligation to represent the insureds."  *Id.* at email

dated Apr. 17, 2008.

On April 22, 2008, Neufeld communicated with Wamsur, via email, to find out the status

of the representation of plaintiffs herein, i.e., defendants in the underlying action.  *Id.* at email

dated Apr. 22, 2008.  Wamsur advised Neufeld that it was the firm's "understanding that due to

the question of coverage (or non-coverage) for various claims asserted in the complaint (e.g.,

punitive damages), the underwriter needs to issue a letter to the insureds concerning such matters

prior to counsel entering an appearance in this action."  *Id.* at email dated Apr. 22, 2008.

Subsequently, Neufeld wrote to James Nicoletti[4] to advise him that he had not received

any substantive communications from Wamsur from the time Wamsur advised him that coverage

issues may exist.  *Id.* at correspondence dated May 14, 2008.  Neufeld also advised that although

defendants herein, i.e., OneBeacon, Northern and IMU, had notice of the lawsuit commenced

against plaintiffs herein, "they have acted with complete disregard for their legal, ethical and

fiduciary responsibilities to their insureds."  *Id.*  Neufeld also noted that while the carriers

initially designated Nicoletti's firm to represent the insureds, he subsequently learned that the

firm was also appointed to advise the carriers on whether they had a duty to defend the insureds

in the first instance.  *Id.*  With regard to the purported conflict of interest, Nicoletti responded

that "at no time did the undersigned or anyone else in this office state orally or in writing that we

---

4.  Neufeld's correspondence is addressed to "James A.V. Nicoletti."  Correspondence from Nicoletti to IMU's
Corteselli identifies Nicoletti as "John A.V. Nicoletti."  For the purposes of this motion, the Court will presume that
the individuals are the same person.

had been retained to represent the interests of the insureds under the . . . policy at issue." *Id.* at correspondence dated May 21, 2008. Nicoletti further stated that "the undersigned advised Mr. Neufeld early on by telephone that this office had been specifically retained to conduct an investigation into the facts underlying the alleged lawsuit." *Id.*

Thus, defendants contend that the Nicoletti firm acted at all times as coverage counsel, providing legal advice to Northern and OneBeacon and never appeared or answered on behalf of plaintiffs in the underlying action. Def. 56.1 Stmt. ¶¶ 16, 18. Plaintiffs contend, on the other hand, that the Nicoletti firm was appointed by the insurance carriers as plaintiffs' defense counsel in the underlying action and that plaintiffs were so advised. Plaintiffs can neither deny or admit whether the Nicoletti firm acted, in fact, as plaintiffs' defense counsel or as defendants' coverage counsel. Plt. 56.1 Ctr. Stmt. ¶ 16. Plaintiffs note that in order to avoid a default due to the Nicoletti firm's failure to appear or answer on behalf of plaintiffs, plaintiffs had to arrange for an extension of their time to answer and for independent counsel to represent them in the underlying action. *Id.* at ¶ 18.

Defendant IMU, on behalf of defendant Northern, issued a reservation of rights letter pursuant to which it purported to undertake the defense of certain plaintiffs. *Id.* at ¶ 19. Defendant One Beacon, on behalf of certain insurance companies which had underwritten policies issued to one or more of the plaintiffs, issued a reservation of rights letter on May 16, 2008 with regard to certain policies underwritten by the Commercial Union Insurance company and GA Insurance Company of New York. Def. 56.1 Stmt. ¶ 20.

Defendants contend that based on their coverage investigation, they learned, among other things, that the insureds had notice of the Bernardis property damage (the subject of the

underlying State lawsuit) prior to the issuance of several policies and that at least one insured had specific notice of a potential claim arising from the property damage as early as 2004. *Id.* at ¶ 22. Plaintiffs deny the foregoing and contend that none of the insureds had notice of the Bernardis' claimed property damage or that they sought to hold the insureds liable for that damage until they were served with the Bernardis complaint in March 2008. Plt. 56.1 Ctr. Stmt. ¶ 22.

In the Bernardis' bill of particulars in the underlying action, they claimed that "[t]he first occurrence when the Defendants' actions caused a flow of water to enter the Plaintiffs' property was in or about March 2003." Def. 56.1 Stmt. ¶ 23. The bill of particulars further stated that there were twenty-eight (28) separate flooding occurrences after the March 2003 date. *Id.* at ¶ 24. The bill of particulars contained the following with respect to communications between Bernardis and Kenneth Stein III:

> Conversations Plaintiff, ANTHONY BERNARDIS, has had with KENNETH F. STEIN, III, in the Spring of 2004 when the Plaintiff, ANTHONY BERNARDIS, told him that his herein described actions with regard to the parking areas located on the west side of River Road, were affecting the drainage from the water management area, which are located between said parking areas and the Plaintiffs' property, thereby causing water to flow onto the Plaintiffs' property. KENNETH F. STEIN, III, refused to discuss these concerns of ANTHONY BERNARDIS with ME. BERNARDIS. Defendant, KENNETH F. STEIN, III, continued thereafter to expand parking areas with more fill thereby exacerbating the flooding conditions at Plaintiff's property even though KENNETH F. STEIN, III, has been and is aware of the affect of the flow of such water on the Plaintiffs' property as described herein. In addition, the actions of the Defendants in expanding their parking lot areas with dense aggregate fill was done without required approval from the TOWN OF ISLIP.

*Id.* at ¶ 25.

Defendant insurance companies herein purport to rely on the Bernardis bill of particulars to prove that the insureds had notice of the alleged property damage to the Bernardis property as

early as 2004 and, as a result, the insureds failure to provide notice of a possible claim to defendants. *Id.* at ¶ 26. As plaintiffs note, however, the bill of particulars (which was not verified by any individual with personal knowledge of the contents) contains unsworn allegations which were not subject to cross-examination, fall outside of the four corners of the complaint, were contradicted by the insureds and were improperly relied upon by defendants to "confirm" any allegations herein. Plt. 56.1 Ctr. Stmt. ¶ 26.

Kenneth F. Stein III ("Ken Stein") is an officer and employee of Sayville Ferry Services ("KFS"), Inc., which leases three of the parcels of property on the east side of River Road. Def. 56.1 Stmt. ¶ 27. Ken Stein is also one of the three trustees of a testamentary trust named in the Bernardis action which owns (but apparently does not occupy) a particular parcel on the east side of River Road. *Id.* at ¶ 28. By letter dated August 27, 2008, OneBeacon partially disclaimed coverage on its own behalf and agreed to provide a defense to certain plaintiffs subject to a reservation of rights. *Id.* at ¶ 29; Plt. 56.1 Ctr. Stmt. ¶ 29. Thereafter, on September 15, 2008, OneBeacon issued a letter on behalf of the respective insurance companies disclaiming coverage under the various policies identified in the August 27, 2008 letter. Def. 56.1 Stmt. ¶ 30. IMU, on behalf of defendant Northern, also issued a declination letter on November 11, 2008 disclaiming coverage under certain policies underwritten by Northern. *Id.* at ¶ 31; Plt. 56.1 Ctr. Stmt. ¶ 31.

The declination letter issued by IMU stated that the declination was based upon certain allegations contained in the particulars submitted by the Bernardises in the underlying action which, according to IMU, evidenced the insureds' failure to provide timely notice of occurrence. Plt. 56.1 Ctr. Stmt. ¶ 32. The declination by OneBeacon stated that the it was based upon

information contained in a separate bill of particulars filed by Bernardis which stated that the events occurred subsequent to the expiration of the insurance policies identified in OneBeacon's August 27, 2008 correspondence. *Id.*

The purported conversation between Bernardis and Ken Stein referenced in the bill of particulars concerned the very claim which is the subject of the underlying State action. Def. 56.1 Stmt. ¶ 33. According to Bernardis, he told Ken Stein that he believed Stein was responsible for the damage to his property. *Id.* at ¶ 34. Bernardis' complaint alleged that Stein and Sayville Ferry Services trucked in and dumped dense aggregate landfill on both the east and west sides of River Road. *Id.* at ¶ 35.

Defendants rely upon Bernardis' deposition testimony and claim that it "establishes" that his allegations against certain plaintiffs are based on activities conducted by the Stein family on both the east and west sides of River Road. *Id.* at ¶ 36. As plaintiffs point out, however, Bernardis' testimony has been expressly contradicted by plaintiffs through their affidavits submitted in this action. In addition, the Supreme Court of the State of New York has made no factual findings with regard to any statements made by Bernardis at his deposition. Consequently, defendants may not rely on Bernardis' deposition testimony to "establish" facts, particularly those disputed by their insureds. Plt. 56.1 Ctr. Stmt. ¶ 36.

Bernardis specifically testified that the damage to his property was caused by Ken Stein and other individuals associated with Sayville Ferry Services altering the parking lots on the *east* side of River Road. Def. 56.1 Stmt. ¶ 37. Three of the subject parcels of property on the east side of River Road are leased to Sayville Ferry Services by co-insured Judith Stein, the testamentary trust and the estate of Kenneth Stein, Jr. *Id.* at ¶ 38. Ken Stein is also one of three

trustees of a testamentary trust which owns one of the parcels on the east side of River Road. *Id.*

at ¶ 39. Ken Stein, either individually or in his capacity as an officer of Sayville Ferry Service, is

the owner or lessee of four of the five parcels of property referenced in the Bernardis complaint.

*Id.* at ¶ 40.

The relevant CGL policy for the policy period from 2007 to 2008 expressly provides that

the insurance applies only if "[p]rior to the policy period, <u>no</u> insured . . . knew that the "bodily

injury" or "property damage" had occurred, in whole or in part." *Id.* at ¶ 41.

On or about January 28, 2009, plaintiffs commenced this action in the Supreme Court of

New York, Suffolk County, seeking a declaratory judgment that defendants are obligated to pay

plaintiffs' defense costs and to indemnify the plaintiffs from any liability or judgment in the

Bernardis action. *Id.* at ¶ 42. Defendants thereafter removed this action to the Eastern District of

New York on the basis of diversity jurisdiction. *Id.* at ¶ 43. In the instant action, plaintiffs allege

that they are each entitled to a defense pursuant to certain policies issued by defendants with

respect to the Bernardis action. *Id.* at ¶ 44. Defendants contend that they disclaimed coverage

based on, *inter alia*, the insureds' late notice of occurrence/claim, the insureds' prior knowledge

of potential claims and because the alleged property damage and/or claims arising out of such

damage occurred prior to the issuance of certain policies. *Id.* at ¶ 45.

As to the other plaintiffs named herein but not named in the underlying State action, i.e.,

Sayville Ferry Services, Inc., Stein's Marine Life, Inc. and KFS Corporation ("corporate

plaintiffs"), they are not named as defendants in, and are not parties to, the Bernardis action. *Id.*

at ¶ 46. Plaintiffs have not alleged that any claim has been asserted Sayville Ferry Services, Inc.,

Stein's Marine Life, Inc. and KFS Corporation. *Id.* at ¶ 47.

On April 13, 2010, plaintiffs filed an amended complaint withdrawing their claims for indemnification without prejudice.  *Id.* at ¶ 48.  On December 10, 2009, plaintiffs filed a motion for summary judgment and an order directing defendants to pay the cost of defending its insureds in the underlying action.  In the alternative, plaintiffs moved for an order granting them partial summary judgment and determining: (1) that defendants improperly declined to provide a defense to the Estate of Kenneth F. Stein, Jr., Judith Stein, Stein's Marine Lift, Inc. and KFS Corporation; (2) that defendants are obligated to pay the defense costs of those entities in the underlying action; and (3) directing defendants to pay the defense costs incurred by all plaintiffs named as defendants in the underlying action from September 16, 2008 through such date as this Court determines that defendants' denial of insurance coverage to plaintiffs was proper.  Plt. 56.1 Ctr. Stmt. ¶ 49.  Defendants filed a cross-motion for partial summary judgment seeking: (1) dismissal of the claims on behalf of certain corporate plaintiffs not named in the underlying Bernardis action; and (2) dismissal of plaintiffs' punitive damages claim.  Def. 56.1 Stmt. ¶ 50.

This Court's Order dated January 25, 2011 granted plaintiffs' motion for partial summary judgment with respect to defendants' duty to defend the non-corporate plaintiffs in the underlying lawsuit.  *Id.* at ¶ 51.  The Court granted defendants' cross-motion with respect to the claims on behalf of the corporate plaintiffs.  *Id.* at ¶ 52.  The Court denied defendants' cross-motion for partial summary judgment on plaintiffs' punitive damages claim.  *Id.* at ¶ 53.  Instead, the Court, held that a plaintiff must allege an independent tort beyond breach of contract to seek punitive damages.  It therefore granted plaintiffs leave to amend their complaint to assert a claim for breach of fiduciary duty to the extent such a claim would not be frivolous.  *Id.* at ¶ 54.  The Order further held that "plaintiffs' complaint shall set forth plausible allegations demonstrating their

entitlement to punitive damages guided by the elements set forth . . . in *New York University v. Continental Ins. Company*, [662 N.E.2d 763, 767 (N.Y. 1995)]." *Id.* at ¶ 55. Included among those elements must be an allegation that defendants' conduct was part of a pattern directed at the public generally. DE 76 at p. 42.

On March 25, 2011, plaintiffs filed their second amended complaint. Def. 56.1 Stmt. ¶ 57. Plaintiffs' second amended complaint does not allege that any purported conduct on the defendants' part was directed at the public. *Id.* at ¶ 58. On May 9, 2011, the Court granted non-corporate plaintiffs' motion for judgment pursuant to FRCP 54(b) and directed defendants to reimburse the non-corporate plaintiffs for defense costs incurred in the underlying Bernardis action. *Id.* at ¶ 59. Prior to the May 9 Order, defendants had made payments of $55,719.63 and $100,000.00 to the non-corporate plaintiffs for defense costs incurred in the underlying Bernardis action. *Id.* at ¶ 60. On May 20, 2011, a Judgment and Order was executed by the undersigned which directed payment of the outstanding principal in the sum of $134,989.47 and prejudgment interest in the sum of $27,957.14. *Id.* at ¶ 61. Defendants subsequently made payments to plaintiffs amounting to the sum of $134,989.47. *Id.* at ¶ 62. As of May 23, 2011, the only amount still owed to plaintiffs is interest in the sum of $27,957.14 (plus per diem interest). *Id.* at ¶ 63.

## B. Procedural History

Previously, plaintiffs moved for a declaratory judgment that defendant insurance companies were under a duty to provide a defense for them, which was granted by Memorandum and Order dated January 28, 2011 (DE 76).

Because the plaintiffs requested punitive damages in their first amended complaint but

did not allege an independent tort, defendants moved for partial summary judgment on plaintiffs'

claim. Plaintiffs asked for leave to amend and added the tort of breach of fiduciary duty to their

complaint. The second amended complaint, however, does not allege that the insurance

companies' behavior was directed at the public, which the Second Circuit requires for the

recovery of punitive damages in a breach of contract case, in addition to alleging a tort

independent of the breach of contract claim. Defendants now move for partial summary

judgment on plaintiffs' breach of fiduciary duty claim and their requests for punitive damages

and attorneys' fees.

## II. DISCUSSION

### A.    Legal Standard for Summary Judgment

A motion for summary judgment may not be granted unless a court determines that there

is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter

of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting FRCP 56(c)).

"Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to judgment as a matter of law." *Williams*

*v. R.H. Donnelly Corp.*, 368 F.3d 123, 126 (2d Cir. 2004). The court must resolve all

ambiguities and draw all inferences in favor of the non-moving party. *Id.*; *Castle Rock*

*Entertainment, Inc. v. Carol Publishing Group*, 150 F.3d 132, 137 (2d Cir. 1998). "A party

opposing a properly brought motion for summary judgment bears the burden of going beyond the

[specific] pleadings, and 'designating specific facts showing that there is a genuine issue for

trial.' " *Amnesty America v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) (quoting

*Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). If there is any evidence in the record from which a reasonable inference may be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper. *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).

There is a "genuine" issue of fact only if the "evidence [presented] is such that a reasonable jury could return a verdict for the nonmoving party." *Giodano v. City of New York*, 274 F.3d 740, 746-47 (2d Cir. 2001). Furthermore, "attempts to twist the record do not create a genuine issue of material fact for a jury." *Kim v. Son*, No. 05 Civ. 1262, 2007 WL 1989473, at *6 (E.D.N.Y. July 9, 2007). Therefore, "where the cited materials do not support the factual assertions in the Statements, the Court is free to disregard the assertion." *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 73 (2d Cir. 2001). Also, "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996). Finally, Federal Rule of Civil Procedure 56(c) mandates that all facts under consideration in a motion for summary judgment be directly supported by proof in admissible form.

**B.     Defendants' Motion for Summary Judgment**

**1.     Plaintiffs' Request for Punitive Damages**

To sustain a claim for punitive damages on account of a breach of contract, a party must establish that: "(1) defendant's conduct must be actionable as an independent tort; (2) the tortious conduct must be of the egregious nature set forth in [*Walker*];[5] (3) the egregious conduct must be

---

5.  In *Walker v. Sheldon*, 179 N.E.2d 497, 498 (N.Y. 1961), the Court of Appeals set out examples of actions in which punitive damages were permitted in New York, including cases of libel, desecration of a grave, fraud and deceit and the forcible abduction of a minor child.

directed to plaintiff; and (4) it must be part of a pattern directed at the public generally." *New York University v. Continental Ins. Co.*, 662 N.E.2d 763, 767 (N.Y. 1995) (internal citations omitted). "Where a lawsuit has its genesis in the contractual relationship between the parties, the threshold task for a court considering defendant's motion to dismiss a cause of action for punitive damages is to identify a tort independent of the contract." *Id.*

With respect to distinguishing an independent tort, New York's Court of Appeals has held:

> Ordinarily, the essence of a tort consists in the violation of some duty due to an individual, which duty is a thing different from the mere contract obligation. When such duty grows out of relations of trust and confidence, as that of the agent to his principal or the lawyer to his client, the ground of the duty is apparent, and the tort is, in general, easily separable from the mere breach of contract.

*Rich v. New York Cent. & Hudson Riv. R.R. Co.*, 87 N.Y. 382, 390 (1882). Thus, " 'an arms-length contract between two parties does not by itself give rise to fiduciary duties between them; something more is required.' " *Hamister v. Liberty Mut. Ins. Co.*, No. 06 Civ. 0600, 2008 WL 4365893, at *9 (W.D.N.Y. Sept. 22, 2008) (quoting *United Magazine Co. v. Murdoch Magazines Distr., Inc.*, No. 00 Civ. 3367, 2001 WL 1607039 (S.D.N.Y. Dec. 17, 2001)).

The mere purchase of an insurance policy does not create a fiduciary relationship between the buyer and the insurance carrier. *Uhlman v. New York Life Ins. Co.*, 17 N.E. 363, 365 (N.Y. 1888) ("It has been held that the holder of a policy of insurance, even in a mutual company, was in no sense a partner of the corporation which issued the policy, and that the relation between the policy-holder and the company was one of contract, measured by the terms of the policy.") (citation omitted); *Paull v. First UNUM Life Ins. Co.*, 744 N.Y.S.2d 95, 97 (App. Div. 2002) (purchase of an insurance policy from an agent or broker does not give rise to a fiduciary

relationship); *Batas v. Prudential Ins. Co. of America*, 724 N.Y.S.2d 3, 7 (App. Div. 2001) ("No special relationship of trust or confidence arises out of an insurance contract between the insured and the insurer; the relationship is legal rather than equitable.") (citing 68A N.Y. Jur.2d Insurance § 651).

It has been held, however, that a fiduciary relationship results when an insurer undertakes the defense of its insured.  *See Hartford Accident and Indemnity Co. v. Michigan Mutual Insurance Co.*, 462 N.Y.S.2d 175, 178 (App. Div. 1983), *aff'd*, 463 N.E.2d 608 (N.Y. 1984) ( "In defending a claim, an insurer is obligated to act with undivided loyalty; it may not place its own interests above those of its assured."); *Rabouin v. Metro. Life Ins. Co.*, 699 N.Y.S.2d 655, 657 (N.Y. Sup. Ct. 1999) ("Undoubtedly, there are instances where a fiduciary relationship springs into existence as a result of the dealings between an insurer and its insured.").

Plaintiffs' second amended complaint alleges an entitlement to punitive damages because, *inter alia*, defendants initially agreed to furnish plaintiffs with a defense in the New York State case and then unilaterally declined to provide that defense, which, according to plaintiffs, amounts to a breach of fiduciary duty.  Aff. Wamsur, Exh. 3 at ¶¶ 80, 81, 89.

Defendants move for summary judgment on plaintiffs' request for punitive damages on the grounds that plaintiffs failed to allege the necessary elements for such damages, including egregious, morally culpable conduct which was part of a pattern of behavior generally directed at the public.

Plaintiffs argue that their claim for punitive damages is predicated upon defendants' alleged breach of fiduciary duty and not upon the breach of the insurance contract.  They contend, therefore, that an allegation of public harm is unnecessary because the punitive damages

are sought in connection with defendants' allegedly tortious conduct.  *See Amusement Industry, Inc. v. Stern*, 693 F. Supp. 2d 301, 317 (S.D.N.Y. 2010) (" 'The limitation of an award for punitive damages to conduct directed at the general public applies only in breach of contract cases, not in tort cases for breach of fiduciary duty.' ") (quoting *Don Buchwald & Assoc., Inc. v. Rich*, 723 N.Y.S.2d 8, 8 (App. Div. 2001)); *Sherry Associates v. Sherry-Netherland, Inc.*, 708 N.Y.S.2d 105, 106 (App. Div. 2000) (same).

New York's Court of Appeals has held:

> The dividing line between breaches of contract and torts is often dim and uncertain. There is no definition of either class of defaults which is universally accurate or acceptable. In a general way, a tort is distinguished from a breach of contract in that the latter arises under an agreement of the parties; whereas, the tort ordinarily is a violation of a duty fixed by law, independent of contract or the will of the parties, although it may sometimes have relation to obligations growing out of or coincident with a contract, and frequently the same facts will sustain either class of action.

*Busch v. Interborough Rapid Transit Co.*, 80 N.E. 197, 198 (N.Y. 1907) (citing *Rich v. N.Y.C. & H.R.R.R Co.*, 87 N.Y. 382, 390 (1882)).

In this case, plaintiffs' claim for punitive damages arose from and is on account of plaintiffs' insurance contract with defendants and the breach thereof.  In other words, defendants agreed to insure plaintiffs and plaintiffs agreed to pay defendants a premium for that insurance. The breach, i.e., defendants' alleged withdrawal of coverage and outright refusal to cover plaintiffs when they were sued in New York State Supreme Court, has its genesis in the agreement between the parties and not through the breach of a legal duty.  Accordingly, plaintiffs request for punitive damages stems from the insurance contract and they must allege and prove that defendants' conduct was: actionable as an independent tort; egregious in nature; directed at

the plaintiff; and that it was part of a pattern directed at the public.

Thus, assuming solely for the purposes of plaintiffs' punitive damages claim that defendants' conduct amounts to the independent tort of breach of fiduciary duty, plaintiffs' request for punitive damages must fail because they have not alleged or offered proof: (1) of anything approaching the type of egregious conduct detailed in *Walker*, *supra*; (2) that defendants directed such egregious behavior toward plaintiffs; and (3) that defendants directed the behavior at the general public.[6]  *See Mayline Enterprises, Inc. v. Milea Truck Sales Corp.*, 641 F. Supp. 2d 304, 311 (S.D.N.Y. 2009) (citing *TVT Records v. Island Def Jam Music Group*, 412 F.3d 82, 94 & n.12 (2d Cir. 2005)) (noting that with respect to an award of punitive damages, binding authority from the Second Circuit Court of Appeals holds that New York continues to require harm directed at the public); *Riordan v. Nationwide Mut. Fire Ins. Co.*, 756 F. Supp. 732, 740 (S.D.N.Y. 1990) (quoting *Walker*, 179 N.E.2d at 499) ("The [New York] Court of Appeals held, however, that "there may be recovery of exemplary damages in [otherwise private] fraud and deceit actions where the fraud aimed at the public generally, is gross and involves high moral culpability.").

Because the Court finds that plaintiffs' request for punitive damages stems from their

---

6. In their opposition papers for the instant motion, plaintiffs also contend that defendants' motion for summary judgment on the punitive damages claim is premature.  Mem. in Opp. at p. 15.  Plaintiffs contend that they require additional discovery pursuant to Federal Rule of Civil Procedure 56(d) to respond to defendants' summary judgment motion.  Previously, however, plaintiffs moved for additional discovery before Magistrate Judge A. Kathleen Tomlinson (DE 77) after this Court issued its Memorandum and Order (DE 76) granting plaintiffs' motion to amend their complaint to the extent they could allege a plausible claim for punitive damages.  Magistrate Judge Tomlinson deferred ruling on plaintiffs' motion for discovery until after they filed the amended complaint containing the punitive damages allegations.  DE 121 at p. 3.  Magistrate Judge Tomlinson then denied, without prejudice to renew, plaintiffs' motion for discovery until this Court determined whether or not plaintiffs stated a viable claim for punitive damages.  Having determined that plaintiffs do not state a viable claim, however, plaintiffs' request for additional discovery is hereby denied.

breach of contract claim and because plaintiffs have failed to plead and/or prove the elements for a punitive damages award in the context of a breach of contract claim, defendants' motion for summary judgment on plaintiffs' request for punitive damages is hereby granted.

### 2. Plaintiffs' Breach of Fiduciary Duty Claim

"Undoubtedly, there are instances where a fiduciary relationship springs into existence as a result of the dealings between an insurer and its insured." *Rabouin v. Metropolitan Life Ins. Co.*, 699 N.Y.S.2d 655, 657 (N.Y. Sup. Ct. 1999) (citing cases). When an insurer commits to providing a defense in the litigation context, a fiduciary relationship is created between the insurer and its insured. *Employers Ins. Co. of Wausau v. Crouse-Community Center, Inc*., 489 F. Supp. 2d 176, 180 (N.D.N.Y. 2007). " 'The basis for the fiduciary obligation is quite clear in the litigation context, for the insurer is undertaking to represent the insured's interests.' " *Id.* (quoting *Dornberger v. Metro. Life Ins*. Co., 961 F. Supp. 506, 546 (S.D.N.Y. 1997)).

To establish a breach of fiduciary duty under New York law, "a plaintiff must prove the existence of a fiduciary relationship, misconduct by the defendant, and damages that were directly caused by the defendant's misconduct." *Kurtzman v. Bergstol*, 835 N.Y.S.2d 644, 646 (N.Y. App. Div. 2007) (citing *Ozelkan v. Tyree Bros. Envtl. Servs., Inc*., 815 N.Y.S.2d 265, 267 (N.Y. App. Div. 2006)).

In support of their motion for summary judgment, defendants argue that plaintiffs' breach of fiduciary duty claim is duplicative of their breach of contract claim and should be dismissed. They contend that this Court has already determined that defendants owed the non-corporate plaintiffs a duty to defend them in the underlying New York State action and that no separate duty apart from the contract is owed to plaintiffs. Furthermore, defendants argue that plaintiffs

-19-

are unable to establish damages which resulted from the alleged breach. Plaintiffs claim that where a contract establishes a relationship of confidence and trust between the parties, a fiduciary duty independent of the contract exists.

As set forth above, plaintiffs contend that defendants breached their fiduciary duties to plaintiffs by first agreeing to undertake plaintiffs' defense by appointing the Nicoletti firm while also retaining the Nicoletti firm as coverage counsel. Plaintiffs further argue that defendants breached their fiduciary duties by unilaterally and improperly abandoning their defense of plaintiffs without seeking judicial approval. They also claim that defendants' declination ignored the duty to act with the utmost good faith and with undivided loyalty toward the insureds.

Defendants, as also set forth above, claim that they never undertook to provide a defense for any of the plaintiffs in the underlying action. Although they originally advised the Nicoletti firm to defend the insureds, the firm never actually undertook such a defense or acted as plaintiffs' counsel at any time, nor did they make an appearance or file an answer on behalf of plaintiffs. Rather, according to defendants, the Nicoletti firm acted at all times as coverage counsel by providing legal advice to Northern Assurance and OneBeacon America. Furthermore, plaintiffs were immediately advised that there were issues with the insurance coverage.

"Both the existence of a fiduciary relationship and the breach of obligations arising from such relationship tend to be 'fact-specific inquir[ies] reserved for a jury.' " *Lapp Insulators LLC v. Gemignani*, No. 09 Civ. 694A, 2011 WL 1198648, at *11 (W.D.N.Y. Mar. 9, 2011) (quoting *Official Comm. of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 00 Civ. 8688, 2002 WL 362794, at *9 (S.D.N.Y. Mar. 6, 2002)). *See BLT Restaurant Group LLC v.*

*Tourondel*, No. 10 Civ. 6488, 2011 WL 3251536, at *6 (S.D.N.Y. July 19, 2011) (quoting

*Official Comm. of Unsecured Creditors*, 2002 WL 362794, at *9, and holding that the existence

of a fiduciary relationship and breach thereof are within the province of a jury); *St. John's*

*University, New York v. Bolton*, 757 F. Supp. 2d 144, 166 (E.D.N.Y. 2010) ("[D]etermining the

existence of a fiduciary relationship requires a fact-specific inquiry implicating all the

circumstances and conduct relevant to understanding the parties' relationship.").

Here, defendants contend that no fiduciary relationship was created because they never

undertook the defense of the insureds until so directed by this Court. Plaintiffs, on the other

hand, contend that defendants appointed the Nicoletti firm to defend them, which created a

fiduciary relationship between the insurers and insureds. They also claim that defendants

breached that duty by reneging on their promise to provide coverage and by retaining the

Nicoletti firm as their own coverage counsel. Given the foregoing and the competing

interpretations of what took place, plaintiffs' breach of fiduciary duty claim may not be

determined by summary judgment because there are genuine issues of material fact as to whether

a fiduciary relationship was created and, if so, whether it was breached. Accordingly,

defendants' motion for summary judgment on plaintiffs' breach of fiduciary duty claim must be

and is denied.

### 3.     Plaintiffs' Request for Attorneys' Fees

Plaintiffs also seek to recover the attorneys' fees incurred in the instant case. They point

out that New York law expressly provides that an insured is entitled to legal fees in a declaratory

judgment action when the insured "has been cast in a defensive posture by the legal steps an

insurer takes in an effort to free itself from its policy obligations." *Mighty Midgets, Inc. v. Centennial Ins. Co.*, 389 N.E.2d 1080, 1085 (N.Y. 1979). Thus, an insured may be granted attorneys' fees in cases where, for example, an insurer commences an action for a declaratory judgment against its insured.

As plaintiffs also point out, courts have granted attorneys' fees to an insured who brings an affirmative declaratory judgment action against the insurer. In support of this proposition, plaintiffs cite to *Lauder v. OneBeacon Ins. Group LLC*, 918 N.Y.S.2d 825, 832 (N.Y. Sup. Ct. 2011), where the court discussed an exception to the general rule set forth in *Mighty Midgets*. That court, quoting *City of New York v. Zurich-American Ins. Group*, No. 03 Civ. 40406, 2004 WL 2403179, at *6 (N.Y. Sup. Ct. Oct. 22, 2004), held that an insured is entitled to attorneys' fees when the insurer places the insured in a position " '*tantamount to an action brought by the insurer seeking to free itself from its policy obligations.*' " *Lauder*, 918 N.Y.S.2d at 833 (emphasis added). *See American Motorists Ins. Co. v. GTE Corp.*, No. 99 Civ. 512, 2000 WL 1459813, at *6 (S.D.N.Y. Sept. 29, 2000) ("Under New York law, the award of attorney's fees in such a case 'may not be had in an affirmative action brought by an assured to settle its rights . . . but only when [the insured] has been cast in a defensive posture by the legal steps an insurer takes in an effort to free itself from its policy obligation.' ") (quoting *Cunniff v. Westfield*, 829 F. Supp. 55, 58 (E.D.N.Y. 1993)).

Plaintiffs contend that defendants placed them in a defensive posture by improperly abandoning the defense they undertook to provide to plaintiffs in the underlying action without seeking a judicial determination as required under New York law. Consequently, according to plaintiffs, defendants should pay plaintiffs' attorneys' fees in bringing the instant declaratory

action.

In the first instance and as aforesaid, there are issues of material fact as to whether defendants undertook to provide, and then abandoned, a defense for the non-corporate plaintiffs. Even assuming, however, that defendants did undertake and then abandon plaintiffs' defense, their conduct simply does not amount to "legal steps" taken by the insurer to free itself from its policy obligations. Rather, it is like any case where a party to a contract breaches his or her part of an agreement which forces the other party to bring suit to enforce his or her rights. Consequently, the circumstances here do not fall within the exception carved out from the "universal rule in this country not to allow a litigant to recover damages for the amount expended in the successful prosecution or defense of its rights." *Mighty Midgets*, 389 N.E.2d at 1085 (holding that "[i]t is the rule in New York that such a recovery may not be had in an affirmative action brought by an assured to settle its rights"). *See Baker v. Health Management Systems, Inc.*, 772 N.E.2d 1099, 1104 (N.Y. 2002) ("The American Rule provides that 'attorney's fees are incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute or court rule.' ") (quoting *Hooper Associates, Ltd. v. AGS Computers, Inc.*, 548 N.E.2d 903, 904 (N.Y. 1989)). Because plaintiffs do not fall within the exception, defendants' motion for summary judgment on plaintiffs' claim for attorneys' fees is hereby granted and plaintiffs' request for fees is hereby dismissed.

## III.  CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment on plaintiffs' claim for punitive damages is hereby **GRANTED**. Defendants' motion for summary judgment on plaintiffs' breach of fiduciary duty claim is hereby **DENIED**. Defendants' motion for summary

judgment on plaintiffs' claim for attorneys' fees is hereby **GRANTED**.

**SO ORDERED**.

Dated: May 7, 2012
      Central Islip, New York

_____/s/_____
Thomas C. Platt, U.S.D.J.
